## DECLARATION OF PABLO ZÁRATE JUÁREZ

I, Pablo Zarate Juarez, declare as follows:

1. This declaration is based on my personal knowledge and is made freely and voluntarily. This declaration has been translated both in English and in Spanish and I fully understand its contents.

2. In March, 2015, I retained Chris Flood of Flood & Flood in Houston, Texas, to represent me in a criminal investigation and in my efforts to recover a 2005 Pilatus airplane which had been seized from me.

3. I never had any conversations with Mr. Flood regarding the criminal charges pending against me in the United States I did, however, share with Mr. Flood my June 25, 2015, statement to the Attorney General of the United States of America, attached hereto as Exhibit A.

4. Mr. Flood and another attorney, John Cline, represented my interests in recovering my airplane in the district court and the 5th Circuit Court of Appeals. In November 2016, when they were unsuccessful in recovering my airplane, I terminated their representation. I have never spoken or otherwise communicated with Mr. Cline.

5. Neither Chris Flood nor John Cline currently represent me and have not represented me since November 2016.

6. I am aware of the allegations by the United States government made against Tomás Yarrington Ruvalcaba. As I stated in my June 25, 2015, letter, I never engaged in criminal activity with Mr. Yarrington. I don't believe that Mr. Flood's or Mr. Cline's representation of Mr. Yarrington is adverse to my interests and I do not believe an actual conflict exists due to Mr. Flood's representation of Mr. Yarrington and his former representation of me and my interests.

United States Courts
Southern District of Texas
FILED

AUG 2 8 2019

Page 1 of 2

David J. Bradley, Clerk of Court

DEFENDANT'S
EXHIBIT

B-12-435

7. On today's date, I had a telephone conversation with Matt Alford, an American lawyer, who explained to me in English and Spanish my rights to conflict-free counsel. I hereby waive that right and consent to Mr. Flood's representation of Mr. Yarrington and, in the event Mr. Cline represents Mr. Yarrington, I waive the same rights.

8. In the unlikely event that I am called as a witness in the trial of Mr. Yarrington, I consent to Mr. Flood retaining separate counsel (counsel other than himself and Mr. Cline) to cross examine me. I understand that Mr. Flood will not share with separate counsel any communications made by me to Mr. Flood.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed by me on August 12, 2019, in México City, México.

**PABLO ZÁRATE JUÁREZ**

**LEON, GUANAJUATO, MEXICO, JUNE 25, 2015.**

**ATTORNEY-GENERAL OF THE UNITED STATES OF AMERICA.**

I, **Pablo Zárate Juárez,** Mexican, by my own right, with address for hearing and receiving notifications located at Miguel Laurent number 49, Colonia del Valle, 03200, Del. Benito Juárez, in Mexico City, Federal District; and authorizing Doctor of Law Pedro Carbajal Jiménez, with professional identity card number 1298754, the Master in Law Aquileo Gilberto Sotelo Pineda, with professional identity card number 1645701, to hear and receive notifications and documents, appear and state before you.

## BACKGROUND

**FIRST** - I am a Mexican construction entrepreneur, holder for some years now, of the following companies:

1. **Inmuebles y Casas Modulares S.A. de C.V.** was established in notarial certificate number 1,244 on October 2, 2002, before the Notary Public number 163, in the city of Matamoros, Tamaulipas.



FRANCISCO SANCHEZ ... ...
Expert Translator Authorized by the
Supreme Court of Justice in Mexico City

EXHIBIT A

By means of notarial instrument number 3,989, on February 8, 2008, of the Protocol of the Notary Public number 299, of the city of Matamoros Tamaulipas, Héctor Pablo Villanueva Contreras resigned as partner, and the undersigned Pablo Zárate Juarez joined as partner.

2. **Constructora Santa Matilde S.A. de C.V.** was incorporated on February 1st, 2005, before the Notary Public 64, of Matamoros Tamaulipas, by means of public deed number 996--Pablo Zárate Juárez and María del Carmen Villanueva Contreras acting as partners.

3. **Urbanizaciones.com.mx S.A. de C.V.** was incorporated on January 17, 2006, by means of deed number 143, of the Protocol of the Public Notary 299, in Matamoros, Tamaulipas-- Gerardo Fragoso Hernández and Pablo Zárate Juárez serving as partners.

4. **Provisep, Protección y Vigilancia en Seguridad Privada, S.A. de C.V.** was incorporated by means of public deed number 92,612 on September 18, 2003, in the Protocol of the Notary Public number 17, of Mexico City, Federal District.

By means of the notarial instrument number 1,664 on June 26, 2009, of the index of the Notary Public number 73 in Ciudad Victoria, Tamaulipas, the Minutes of the Meeting of January 5 of the aforementioned year were notarized, through



MARCOS YBARRA CASASUS
2
Expert Translator Authorized by the
Supreme Court of Justice in Mexico City

EXHIBIT A

which the undersigned Pablo Zárate Juárez and María del Carmen Villanueva Contreras assume the status of partner.

**In the United States of America, I own the following companies:**

Viza Construction, L.L.C., which was incorporated on November 28, 2005, being registered in the File of the Office of the Secretary of State of the State of Texas, in the United States of America, with the file number 801471610.

**SECOND** - I want to emphasize that as a result of the public insecurity which prevailed in our country in the years 2011 and 2012, and in order to protect the physical integrity of my family as well as my own, I decided to purchase an aircraft.

Because of this interest I knew that mister **FERNANDO ALEJANDRO CANO MARTÍNEZ**, who I know because he is a businessman of the entity of Tamaulipas, had the desire to sell the aircraft which he used to travel.

That way I knew that the purpose of the sale of this aircraft was to liquidate the credit number 37163 which he had with the **INTERNATIONAL BANK** of McAllen Texas, USA, who **FERNANDO CANO** had managed himself to finance the acquisition of the aircraft and the he could not cover it any longer, so I asked my accountants to contact the officials of said banking institution to renegotiate terms and



MARCOS TAVERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A

credit conditions, clarifying that the original credit was followed, monthly covered by the undersigned through my companies as required in subsequent lines.

So, after several talks it was agreed between the banking institution, Mr. **FERNANDO CANO** and the undersigned that the most convenient means for the acquisition of the aircraft was the purchase of the shares of the company **"PREMIER",** by virtue of the aircraft being the only asset of the company and that it could not be sold directly by the latter, due to the lien which it had for the credit with the **INTERNATIONAL BANK,** in addition that a Mexican person is not able to register the aircraft before the Office of Aeronautics, credit which was being covered monthly, but presented some delays in payment of the agreed installments, so the banking institution was willing and had great interest in another person acquiring the shares of the company to deal with their economic obligations.

In this period of negotiations, the banking institution, as means of pressure, immobilized the aircraft with chains on the turbines, thus forcing this party to settle all the debt.

Thus, once the aircraft was checked, it was concluded that it was in good condition, so it was agreed that the price of the operation would be to cover the full amount that **"PREMIER"** owed the **INTERNATIONAL BANK** and at the same time to pay to the shareholders and **FERNANDO CANO** the proportional share of the credit that they had covered directly to the bank. In this way, once the



MARCOS TAVERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A 

price was fixed, I talked with my accountants, who are in charge of my personal and business finances, for them to settle the sale.

Subsequently, we communicated by phone and e-mail and the previous proposal was presented, which stipulated that buying party of the aircraft would be the company **"VIZA CONSTRUCTION"**, LLC of which I am owner and legal representative, as well as it was also agreed to formalize the transfer of the debt of the aircraft in those terms.

Finally, contracts for the purchase of shares were executed on February 15 (fifteen), 2012 (two thousand and twelve), before **JAQUES LE BLANC;** Notary Public of Bexar County, Texas, USA, where it was agreed that the company **"VIZA CONSTRUCTION", LLC.,** represented by the undersigned, would acquire 99% and 1% of the shares of **"PREMIER",** which I learned at the time of signing that belonged to **ALBERTO BERLANGA,** and **ALBERTO VILA,** respectively, with full knowledge of the parties that the only asset owned by the company was the private aircraft brand **PILATUS AIRCRAFT LTD,** model **PC-12/45,** with registration number N679PE, serial number 679, year 2005, and that its only debt was the credit number 37163, granted by the **INTERNATIONAL BANK,** located at 1801 S. 2nd Street, McAllen, Texas, which the new shareholder **"VIZA CONSTRUCTION", LLC** undertook to cover ridding the former shareholders of any liability for such credit.

EXHIBIT A


MARCOS TAVERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City

**THIRD - I PROCEED TO EXPLAIN THE FINANCIAL LOGISTICS ADOPTED TO BUY THE AFOREMENTIONED AIRCRAFT:**

It is important to note that the payment of the aircraft was carried out through deposits via transfer and direct charges which the **International Bank** carried out, to account **646539**, opened in said Bank, on behalf of **"PREMIER"**, by which the pending payments of credit number **37163** were repaid to this banking institution for a total amount of **$1'850, 154.69 USD (ONE MILLION EIGHT HUNDRED AND FIFTY THOUSAND ONE HUNDRED AND FIFTY-FOUR USD 69/100), which are broken down as it follows:**

a) Transfer carried out on March 30 (thirty), 2011 (two thousand eleven), for the amount of **$67,551.47 (SIXTY SEVEN THOUSAND FIVE HUNDRED AND ONE USD 47/100),** from account number **270005595,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

b) Direct charge to account 37163 dated May 9 (nine), 2011 (two thousand eleven), for the amount of **$1,693.47 (ONE THOUSAND SIX HUNDRED AND NINETY-THREE USD 47/100).**

c) Transfer dated on May 13 (thirteen), 2011 (two thousand eleven), for the amount of **$35,562.81 (THIRTY-FIVE THOUSAND FIVE HUNDRED AND SIXTY-TWO USD 81/100),** from account number **270011269,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

EXHIBIT A


MARCOS TAVERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City



**d)** Direct charge to account 37163 dated May 13 (thirteen), 2011 (two thousand eleven), for the amount of **$1,693.81 (ONE THOUSAND SIX HUNDRED AND NINETY-THREE USD 81/100).**

**e)** Transfer dated on June 1st (the first), 2011 (two thousand eleven), for the amount of **$35,562.81 (THIRTY-FIVE THOUSAND FIVE HUNDRED AND SIXTY-TWO USD 81/100),** from account number **270011269,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

**f)** Transfer dated on June 28 (twenty-eight), 2011 (two thousand eleven), for the amount of **$33,890.00 (THIRTY-THREE THOUSAND EIGHT HUNDRED AND NINETY USD 00/100),** from account number **270011269,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

**g)** Transfer dated on July 29 (twenty-nine), 2011 (two thousand eleven), for the amount of **$32,155.61 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-FIVE USD 61/100),** from account number **270011269,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

**h)** Transfer dated on August 29 (twenty-nine), 2011 (two thousand eleven), for the amount of **$32,155.61 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-FIVE USD 61/100),** from account number **270005595,** opened in the **FIRST NATIONAL BANK,** on behalf of **VIZA CONSTRUCTION, LLC.**

**i)** Transfer dated on September 29 (twenty-nine), 2011 (two thousand eleven), for the amount of **$32,155.61 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-FIVE USD 61/100),** from account number **270012680,** opened in

MARCOS TAVERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A



the **FIRST NATIONAL BANK**, on behalf of **VIZA MACHINERY, LLC**.

j) Transfer dated on October 26 (twenty-six), 2011 (two thousand eleven), for the amount of **$32,155.61 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-FIVE USD 61/100),** from account number **271015764**, opened in the **FIRST NATIONAL BANK**, on behalf of **PABLO ZÁRATE JUÁREZ**.

k) Transfer dated on November 29 (twenty-nine), 2011 (two thousand eleven), for the amount of **$32,155.61 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-FIVE USD 61/100),** from account number **270006699**, opened in the **FIRST NATIONAL BANK**, on behalf of **INMUEBLES Y CASAS MODULARES, S.A. DE C.V.**

l) Transfer dated on December 23 (twenty-three), 2011 (two thousand eleven), for the amount of **$32,156.00 (THIRTY-TWO THOUSAND ONE HUNDRED AND FIFTY-SIX USD),** from account number **270006699**, opened in the **FIRST NATIONAL BANK**, on behalf of **INMUEBLES Y CASAS MODULARES, S.A. DE C.V.**

m) Direct charge to account 37163 dated February 13 (thirteen), 2012 (two thousand and twelve), for the amount of **$435.00 USD (FOUR HUNDRED AND THIRTY-FIVE USD 00/100).**

n) Transfer dated on February 23 (twenty-three), 2012 (two thousand and twelve), for the amount of **$1'480,831.68 USD (ONE MILLION FOUR HUNDRED AND EIGHTY THOUSAND EIGHT HUNDRED AND THIRTY-ONE USD 68/100),** from account number **271015764**, opened in the **FIRST NATIONAL BANK**, on behalf of the undersigned **PABLO ZÁRATE JUAREZ, which was directly transferred to the credit account 37163 of the**



MARCOS TAPYERA (?) ...
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A

**INTERNATIONAL BANK;** it is noteworthy that this last payment was made that way because we attempted to negotiate with the **INTERNATIONAL BANK** the extension of the period of credit that "Premiere" had, the undersigned even attended personally the offices of the banking institution for this to be authorized, but that request was denied, for which the full credit had to be settled through a last payment and in such circumstances I applied for a credit in the **FIRST NATIONAL BANK** to settle said debt.

By way of explanation, on the last amount of $1'480, 831.68 (ONE MILLION FOUR HUNDRED AND EIGHTY THOUSAND EIGHT HUNDRED AND THIRTY-ONE USD 68/100), its source is described as it follows:

a) On July 15 (fifteen), 2011 (two thousand eleven), the Ministry of Health of the Federal Executive Power, granted the public works contract number **DGDIF-0638-11** to **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**, for an amount of $343'777, 358.53 MXN (THREE HUNDRED AND FORTY-THREE MILLION SEVEN HUNDRED SEVENTY-SEVEN THOUSAND THREE HUNDRED AND FIFTY-EIGHT MEXICAN PESOS 53/100), plus the value-added tax.

b) On July 29 (twenty-nine), 2011 (two thousand eleven), the aforementioned Ministry of Health of the Federal Executive Power paid the advance payment for the Year 2011 of said contract, for an amount of **$49'003,912.00 MXN (FORTY-NINE MILLION THREE THOUSAND NINE HUNDRED AND TWELVE MEXICAN PESOS 00/100)**, by means of an electronic transfer from the account of the **FEDERAL TREASURY** to the bank account number **0070894971**, from Banorte, whose owner is **THE COMPANY "INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**



EXHIBIT A

**c)** On February 15 (fifteen), 2012 (two thousand and twelve), the Ministry of Health paid the advance payment for the Year 2012 of said contract, for an amount of **$31'500,000.00 MXN (THIRTY ONE MILLION FIVE HUNDRED THOUSAND MEXICAN PESOS 00/100)**, by means of an electronic transfer from the account of the **FEDERAL TREASURY** to the bank account number **0070894971**, from Banorte, whose owner is **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**

**d)** The same day a transfer between own accounts for the amount of **$31'500,000.00 MXN (THIRTY ONE MILLION FIVE HUNDRED THOUSAND MEXICAN PESOS 00/100)** was made, to bank account **0661414374**, opened in **BANORTE**, whose owner is also **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**

**e)** On February 16 (sixteen), 2012 (two thousand and twelve), with the existing resources in the bank account referred to in the immediately preceding paragraph, a purchase of foreign currency was made for **$800,000.00 USD (EIGHT HUNDRED THOUSAND USD)**, through **BANCO BASE S.A. DE C.V.**, at an exchange rate of **$12.855 MXN (TWELVE MEXICAN PESOS 855/1000)**, for a sum in Mexican pesos of **$10'284,000.00 MXN (TEN MILLION TWO HUNDRED AND EIGHTY-FOUR MEXICAN PESOS 00/100)**.

**f)** The same day the sum of **$800,000.00 USD (EIGHT HUNDRED THOUSAND USD)** was transferred to the bank account **270006699**, opened in the **FIRST NATIONAL BANK**, by **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**

**g)** On February 17 (seventeen), 2012 (two thousand and twelve), a purchase of foreign currency was made for **$800,000.00 USD (EIGHT HUNDRED THOUSAND USD)**, through **BANCO BASE S.A. DE C.V.**, at an exchange rate of **$12.785 MXN (TWELVE MEXICAN PESOS 785/1000)**, for a sum in Mexican pesos of

EXHIBIT A


HORACIO TAVIRA GHICA... Expert Translator Authorized by the Supreme Court of Justice in México City



**$10'228,000.00 MXN (TEN MILLION TWO HUNDRED AND TWENTY-EIGHT MEXICAN PESOS 00/100).**

h) The same day the sum of **$800,000.00 USD (EIGHT HUNDRED THOUSAND USD)** was transferred to the bank account **270006699**, opened in the **FIRST NATIONAL BANK**, by **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**

i) On February 21 (twenty-first), 2012 (two thousand and twelve), a transfer of **USD $1'600,000.00 (ONE MILLION SIX HUNDRED THOUSAND USD)** was made from the banking **account 270006699**, opened in the **FIRST NATIONAL BANK**, by **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**, to the bank account **275038009**, of the **"FIRST NATIONAL BANK"**, whose owner is **"PREMIER INTERNATIONAL HOLDINGS", LTD.**

j) On February 22 (twenty-two), 2012 (two thousand and twelve), a transfer of **$1'481,176.00 USD (ONE MILLION FOUR HUNDRED AND EIGHTY-ONE THOUSAND ONE HUNDRED AND SEVENTY SIX USD)** was made from the banking account **275038009**, of the **"FIRST NATIONAL BANK"**, whose owner is **"PREMIER INTERNATIONAL HOLDINGS", LTD.**, to the account **1276017928** of the same bank.

k) On February 22 (twenty-two), 2012 (two thousand and twelve), a transfer of **$1'481,176.00 USD (ONE MILLION FOUR HUNDRED AND EIGHTY-ONE THOUSAND ONE HUNDRED AND SEVENTY SIX USD)** was made from the account **1276017928**, of the **"FIRST NATIONAL BANK"**, whose owner is **"PREMIER INTERNATIONAL HOLDINGS", LTD.**, to the account number **271015764** of the **"FIRST NATIONAL BANK"**, whose owner is **PABLO ZÁRATE JUÁREZ.**

l) The same day, from the account number **271015764**, of the **"FIRST NATIONAL BANK"**, whose owner is **PABLO ZÁRATE JUÁREZ**, the credit of **$481,176.00'271015764 USD (ONE MILLION FOUR HUNDRED AND EIGHTY-ONE THOUSAND**



MARCOS TAVERA CASTRO
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A

**ONE HUNDRED AND SEVENTY SIX USD)** was paid, to the banking account **271015764** opened in the **INTERNATIONAL BANK**, on behalf of **"PREMIER INTERNATIONAL HOLDINGS"**, **LTD**.

On the direct instructions of FERNANDO ALEJANDRO CANO MARTÍNEZ, the amount of $9'750,000.00 MXN (NINE MILLION SEVEN HUNDRED AND FIFTY THOUSAND MEXICAN PESOS 00/100) was paid to CARLOS ADRIAN GONZALES DELGADILLO, which at an USD exchange rate of $11.95 MXN (eleven Mexican pesos with ninety-five cents) gives as a result the amount of $815,899.58 (eight hundred fifteen thousand eight hundred and ninety-nine USD with fifty-eight cents), which is broken down in the following manner:

a) On February 11 (eleven), 2011 (two thousand eleven), a transfer of **$2'000, 000.00 MXN (TWO MILLION MEXICAN PESOS 00/100)** was made, from bank account **0609770483**, from **BANORTE**, whose owner is **"INMUEBLES Y CASAS MODULARES"**, **S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO.**

b) On February 16 (sixteen), 2011 (two thousand eleven), a transfer of **$1'000, 000.00 MXN (ONE MILLION MEXICAN PESOS 00/100)** was made, from bank account **0070894971**, from **BANORTE**, whose owner is **"INMUEBLES Y CASAS MODULARES"**, **S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO.**


MARCOS LAITRA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City


EXHIBIT A

**c)** On March 09 (nine), 2011 (two thousand eleven), a transfer of **$1'250, 000.00 MXN (ONE MILLION TWO HUNDRED AND FIFTY THOUSAND MEXICAN PESOS 00/100)** was made, from bank account **0070894971**, from **BANORTE**, on behalf of **"INMUEBLES Y CASAS MODULARES", S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO**.

**d)** On April 11 (eleven), 2011 (two thousand eleven), a transfer of **$1'500, 000.00 MXN (ONE MILLION FIVE HUNDRED THOUSAND MEXICAN PESOS 00/100)** was made, from bank account **0728100060880551374**, from **BANORTE**, on behalf of **"PROVISEP PROTECCIÓN Y VIGILANCIA EN SEGURIDAD PRIVADA", S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO**.

**e)** On April 14 (fourteen), 2011 (two thousand eleven), a transfer of **$3'000, 000.00 MXN (THREE MILLION MEXICAN PESOS 00/100)** was made, from bank account **0609770559**, from **BANORTE**, on behalf of **"URBANIZACIONES COM MX", S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO**.

**f)** On April 20 (twenty), 2011 (two thousand eleven), a transfer of **$1'000, 000.00 MXN (ONE MILLION MEXICAN PESOS 00/100)** was made, from bank account **0609770559**, from **BANORTE**, on behalf of **"URBANIZACIONES COM MX", S.A. DE C.V.**, to the account with the interbank CLABE number **002580419400476741**, from **BANAMEX-CITIBANK**, in favor of Mr. **CARLOS ADRIAN GONZALEZ DELGADILLO**.

**From all those payments it follows that the undersigned PABLO ZÁRATE JUÁREZ is a good faith purchaser of the**




MARCOS TAMERA CASADO
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A

**aircraft owned by "PREMIER", given that it is fully demonstrated that through various transfers and direct charges from the bank accounts of my businesses and from my personal accounts, I paid for the acquisition of said American company's shares, the following:**

a) On the one hand, the pending balance of the bank credit with the INTERNATIONAL BANK for a sum of **$1'850,154.69 USD (ONE MILLION EIGHT HUNDRED AND FIFTY THOUSAND ONE HUNDRED AND FIFTY-FOUR USD 69/100);**

b) On the other, the amount of **$9'750,000.00 MXN (NINE MILLION SEVEN HUNDRED AND FIFTY THOUSAND MEXICAN PESOS 00/100)** was paid to CARLOS ADRIAN GONZALES DELGADILLO, which at an USD exchange rate of $11.95 MXN (eleven Mexican pesos with ninety-five cents) gives as a result the amount of **$815,899.58 (eight hundred fifteen thousand eight hundred and ninety-nine USD with fifty-eight cents),** as reimbursement of the payments made by the shareholders or Mr. **FERNANDO ALEJANDRO CANO MARTÍNEZ,** to the **INTERNATIONAL BANK,** of the monthly installments of the aforementioned credit.

(Consequently, it is appropriate to illustrate with the mathematical operation of sum that the two specified amounts of subparagraphs a) and b) yield the following result:

**$ 1'850,154.69 (American dollars)**

**$ 815,899.58 (American dollars)**

---

**$ 2'666,054.27 (American dollars)**


MARCOS TAVERA CASADO
14
Expert Translator Authorized by the
Supreme Court of Justice in México City

EXHIBIT A



## DECLARATION OF MATT ALFORD

I, Matt Alford, declare as follows:

1.      I am a member in good standing of the State Bar of Texas since 1991. I am admitted to practice in the United States District Court for the Southern District of Texas.

2.      On August 12, 2019, I had a telephone conversation with an individual who identified himself as Pablo Zárate. Mr. Zárate acknowledged that Chris Flood had previously represented him. He further acknowledged that Mr. Flood no longer represented him. I reviewed with him the potential conflict of interest associated with Mr. Flood's representation of Tomás Yarrington Ruvalcaba. Mr. Zárate believes that Mr. Yarrington's case is not a matter adverse to him but in the event it is determined that Mr. Yarrington's interests are adverse to him, he consented to Mr. Flood's representation of Mr. Yarrington. I also discussed with Mr. Zárate the possibility that he could possibly become a witness in Mr. Yarrington's trial. He understood that if that were to occur, separate counsel would cross examine him to eliminate concerns of confidential information previously conveyed to Mr. Flood. Mr. Zárate consented to being cross examined by separate counsel in that event. I am fluent in Spanish and English. My discussions with Mr. Zárate were in Spanish and I translated his declaration in English into Spanish.

3.      After reviewing the contents of his declaration with him, I believe Mr. Zárate knowingly, willfully, and intelligently waived any potential conflict of interest in Mr. Flood's former representation of him and current representation of Mr. Yarrington.

United States Courts
Southern District of Texas
FILED

AUG 2 8 2019

David J. Bradley, Clerk of Court



DEFENDANT'S
EXHIBIT
2
B-12-435

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2019.

MATT ALFORD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. 1:12-CR-435-1 |
| | § | |
| TOMÁS YARRINGTON RUVALCABA | § | |

## DECLARATION OF TOMÁS YARRINGTON RUVALCABA

I, TOMÁS YARRINGTON RUVALCABA, defendant in this case, declare as
follows:

1.     This declaration is based on my personal knowledge and is made freely and
voluntarily. This declaration has been translated both in English and in Spanish and I fully
understand its contents.

2.     I have fully discussed with my attorney, CHRIS FLOOD, the facts of this
case and the circumstances and possible consequences of his representation of me along
with his former representation of Pablo Zárate Juárez. I have also fully discussed this
waiver with independent counsel, Cordt Akers.

3.     Mr. Flood, and Mr. Akers separately, have advised me of my right to conflict
free counsel. Mr. Flood and Mr. Akers have also fully discussed the advantages and
disadvantages of Mr. Flood's representation of me and his former representation of Pablo
Zárate Juárez, and how such joint representation may affect my legal rights.

4.     These discussions regarding multiple representation with Mr. Flood first and
then later with Mr. Akers have included discussions regarding possible conflicts of interest.
It has been explained to me that Mr. Flood's prior representation of Mr. Zárate poses a

United States Courts
Southern District of Texas

AUG 28 2019

David J. Bradley, Clerk of Court

DEFENDANT'S
EXHIBIT
3A
B-12-435

potential conflict of interest. It has been explained to me that these kinds of conflicts of interests can be dangerous to a defendant in a number of ways. A few examples explained to me are that the government may offer to recommend a lesser sentence to one defendant if he cooperates with the government. His lawyer ought to advise him on whether or not to accept the offer. If the lawyer advises him to accept the offer, it may harm the case of the other defendant who is also his former client. It has also been explained to me that the government may let a defendant who is not as involved as other defendants plead guilty to lesser charges than the other defendants. After the guilty plea, the government may require the defendant to testify. The lawyer who represents more than one defendant might recommend that the first defendant not plead guilty to protect the other defendants he represents; or the lawyer might recommend that the first defendant plead guilty and testify, which might harm the cases of the other defendants.

5.     Also, Mr. Flood has informed me that in the unlikely event Pablo Zárate Juárez becomes a witness for the government in my trial where Mr. Flood represents me, it would be necessary for Mr. Flood to enlist the services of separate counsel to cross examine Mr. Zárate. Knowing of that obligation, I hereby consent to that arrangement and waive any potential or actual conflict that may exist through Mr. Flood's prior representation of Mr. Zárate, and consent to separate counsel's cross examination of Mr. Zárate should the need arise.

6.     While I am fully aware of my right to separate representation, I want CHRIS FLOOD to represent me in connection with this proceeding. I am fully satisfied that CHRIS FLOOD will, at all times, represented my best interests.

7.     I represent to the Court that I have given full consideration to all of these matters, and I knowingly, intelligently, and willingly waive my right to conflict free counsel and request that CHRIS FLOOD represent me in this matter.

8.     I have read the above statement, I understand it fully, I know I have a right to an attorney who has not represented anyone in a potentially related matter, and I choose to give up this right. Put simply, I want CHRIS FLOOD as my lawyer even though he has previously represented Pablo Zárate Juárez in a potentially related case and may have a conflict of interest. I also understand that by signing this waiver I cannot complain on appeal that my lawyer of choice had a conflict of interest in representing me.

I declare under penalty of perjury that the foregoing is true and correct and was executed in Houston, Texas, on August 16, 2019.

_____
TOMÁS YARRINGTON RUVALCABA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. 1:12-CR-435-1 |
| | § | |
| TOMÁS YARRINGTON RUVALCABA | § | |

### DECLARACIÓN DE TOMÁS YARRINGTON RUVALCABA

Yo, TOMÁS YARRINGTON RUVALCABA, el acusado en este caso, declaro lo

siguiente:

1.      Esta declaración se basa en mi conocimiento personal y se realiza de forma

libre y voluntaria. Esta declaración ha sido traducida tanto en inglés como en español y

entiendo completamente su contenido.

2.      He discutido completamente con mi abogado, CHRIS FLOOD, los hechos

de este caso y las circunstancias y posibles consecuencias de su representación junto con

su representación previo de Pablo Zárate Juárez. También he discutido completamente esta

renuncia con un abogado independiente, Cordt Akers.

3.      El licenciado Flood y el licenciado Akers por separado, me han informado

sobre mi derecho de un abogado ~~conflicto~~ de interés.  El licenciado Flood y el licenciado

Akers también han discutido completamente las ventajas y desventajas de mi

representación por el licenciado Flood y por su representación previo de Pablo Zárate

Juárez, y cómo dicha representación conjunta puede afectar mis derechos legales.

4.      Estas discusiones con respecto a la representación múltiple con primero el

licenciado Flood y luego con el Sr. Akers han incluido discusiones sobre posibles

Southern District of Texas
FILED

AUG 2 8 2019

David J. Bradley, Clerk of Court

DEFENDANT'S
EXHIBIT
3B
B-12-435

conflictos de intereses. Me han explicado que la representación previa del licenciado Flood del Sr. Zárate plantea un posible conflicto de intereses. Me han explicado que este tipo de conflictos de intereses puede ser peligroso para un acusado de varias maneras. Algunos ejemplos que me explicaron son que el gobierno puede ofrecer recomendar una sentencia menor a un acusado si coopera con el gobierno. Su abogado debería aconsejarle si acepta o no la oferta. Si el abogado le aconseja que acepte la oferta, puede dañar el caso del otro acusado, que también es su previo cliente. También me han explicado que el gobierno puede permitir que un acusado que no está tan involucrado como otros acusados que se declare culpable de cargos menores que los otros acusados. Después de la declaración de culpabilidad, el gobierno puede exigir que el acusado testifique. El abogado que representa a más de un acusado podría recomendar que el primer acusado no se declare culpable para proteger a los otros acusados que representa; o el abogado podría recomendar que el primer acusado se declare culpable y testifique, lo que podría dañar los casos de los otros acusados.

5.      Además, el licenciado Flood me ha informado que en el improbable caso de que Pablo Zárate Juárez se convierta en testigo del gobierno en mi juicio donde el licenciado Flood me representa, sería necesario que el licenciado Flood contratara los servicios de un abogado separado para interrogar al Sr. Zárate. Conociendo esa obligación, doy mi consentimiento a ese acuerdo y renuncio a cualquier conflicto potencial o real que pueda existir a través de la representación previa del licenciado Flood del Sr. Zárate, y doy mi consentimiento para que otro abogado interrogue al Sr. Zárate si surge la necesidad.

6.      Si bien soy plenamente consciente de mi derecho de representación separado, quiero que CHRIS FLOOD me represente en relación con este procedimiento. Estoy

completamente satisfecho de que CHRIS FLOOD, en todo momento, representará mis mejores intereses.

7.     Represento ante el Tribunal que he tenido plenamente en cuenta todos estos asuntos, y a sabiendas, de manera inteligente y voluntaria renuncio a mi derecho a un abogado libre de conflictos y solicito que CHRIS FLOOD me represente en este asunto.

8.     He leído esta declaración, la entiendo completamente, sé que tengo derecho a un abogado que no haya representado a nadie en un asunto potencialmente relacionado, y elijo renunciar a este derecho.  Quiero a CHRIS FLOOD como mi abogado a pesar de que él ha representado previamente a Pablo Zárate Juárez en un caso potencialmente relacionado y puede tener un conflicto de intereses. También entiendo que al firmar esta exención no puedo quejarme en la apelación de que mi abogado de mi elección tuvo un conflicto de intereses al representarme.

Declaro bajo pena de perjurio que esta declaración es verdadero y correcto y fue ejecutado en Houston, Texas, el 16 de agosto de 2019.

TOMÁS YARRINGTON RUVALCABA

## DECLARATION OF CORDT AKERS

I, Cordt Akers, declare as follows:

1.     I am a member in good standing of the State Bar of Texas since 2012. I am admitted to practice in the United States District Court for the Southern District of Texas.

2.     On August 16, 2019, I met with Tomás Yarrington Ruvalcaba at the Federal Detention Center in Houston, Texas. At that time I reviewed with him his declaration that he signed in my presence. I also confirmed with him the contents of the declaration and informed him of his right to representation by an attorney without any actual or potential conflicts of interest.

3.     In my opinion, Mr. Yarrington knowingly, willfully, and intelligently signed his declaration and waived his right to conflict free counsel. He further understood that by choosing to have Chris Flood represent him he could not complain on appeal that Mr. Flood labored under any actual or potential conflict in his representation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 16, 2019.



CORDT AKERS



DEFENDANT'S
EXHIBIT
4

B-12-435