Case 1:12-cr-00435   Document 128   Filed on 11/12/19 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
November 12, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 1:12-CR-435-1 |
| | § | |
| TOMAS YARRINGTON RUVALCABA | § | |

## ORDER

The Court is in receipt of Defendant's Renewed Motion to Substitute Counsel, Dkt. No. 120; the Government's Response to Defendant's Motion, Dkt. No. 122; Defendant's Reply, Dkt. No. 123; Defendant's Unopposed Motion to Continue Settings, Dkt. No. 125; and Carlos Monarrez's Application for Compensation and Supporting Memorandum. For the reasons below, the Court **GRANTS** Defendant's Renewed Motion to Substitute Counsel, Dkt. No. 120, and **ORDERS AND CERTIFIES** that the Clerk of the Court shall transmit Carlos Monarrez's Application for Compensation to the Chief Judge of the Fifth Circuit, and this Certificate for consideration by the Chief Judge of the Circuit. The Court also **GRANTS** Defendant's Unopposed Motion to Continue Settings, Dkt. No. 125.

### I. Relevant Procedural History

On August 7, 2019, Defendant Tomas Yarrington Ruvalcaba ("Yarrington") filed his Motion to Substitute Attorney Chris Flood ("Flood") in place of Carlos Monarrez ("Monarrez") and Mervyn Mosbacker, Jr. ("Mosbacker"), which was unopposed by Monarrez and Mosbacker but opposed by the Government. Dkt. No. 104. On August 12, 2019, the Government filed a Motion for Rule 44(c) Hearing, requesting a hearing regarding the potential conflict of interest stemming from Flood's current representation of Yarrington and his prior representation of Pablo Zarate Juarez ("Zarate"). Dkt. No. 106. On August 13, 2019, the Court granted the Government's motion and set a Rule 44(c)/*Garcia* hearing on August 28, 2019. Dkt. No. 107.

On August 28, 2019, a hearing was held pursuant to the mandates of Federal Rule of Criminal Procedure 44(c) and *United States v. Garcia*. On the same day, after consideration, the Court denied Defendant's motion to substitute, with an order to subsequently follow. *See* August 28, 2019 Minute Entry. On September 16, 2019, the Court issued its Order, concluding that (1) a serious potential conflict of interest existed in Flood's representation of Yarrington, and (2) Yarrington validly waived his Sixth Amendment right to conflict-free counsel, but Zarate did not validly waive the conflict of interest. Dkt. No. 119.

On September 30, 2019, Yarrington filed his Renewed Motion to Substitute Counsel. Dkt. No. 120. On October 3, 2019, the Government responded to the renewed motion, Dkt. No. 122, and Yarrington replied, Dkt. No. 123. On October 8, 2019, Yarrington filed an Unopposed Motion to Continue Settings for a period of at least 30 days, Dkt. No. 125. On October 9, 2019, the Court ordered Monarrez and Mosbacker to complete the Criminal Justice Act ("CJA") Form 20 with an attached copy of all supporting documents by October 19, 2019. Dkt. No. 127. Monarrez submitted his CJA Voucher, while Mosbacker advised the Court that he would not be submitting a voucher for payment in the event that the Court permits Yarrington to retain him as his attorney. The Court now considers the pending motions and voucher.

## II.    Validity of Zarate's Waiver

In his Renewed Motion to Substitute Counsel, Yarrington seeks the Court's reconsideration of the denial of his Motion to Substitute Counsel, Dkt. No. 104, and represents that "he has taken the following steps to meet the Court's concerns":

1. This motion expressly seeks the substitution of Flood *and Mosbacker* as retained counsel for Yarrington. In the unlikely event Zarate testifies for the government at Yarrington's trial, Mosbacker will cross-examine him. Flood has not shared with Mosbacker any information that he obtained from Zarate during the representation. Declaration of Chris Flood at ¶ 3 (attached as Exhibit 1).

2. Attached to this motion as Exhibits 2A and 2B are second declarations from Zarate in English and Spanish. The declarations are notarized, apostilled, and authenticated in accordance with Mexican law. The declarations make clear that Zarate knowingly waives any potential conflict Flood may have in representing Yarrington. As the second declarations explain, Zarate consulted with attorney Matt Alford before signing them, just as he did before signing his first declaration.
3. Attached to this motion as Exhibit 3 is a second declaration from attorney Alford. The declaration is signed under penalty of perjury in accordance with 28 U.S.C. § 1746. The second Alford declaration states that he consulted with Zarate in English and Spanish before Zarate signed his second declaration. In the event a hearing is necessary, Alford will appear at a hearing on this motion and respond to questions from the Court and counsel about his consultations with Zarate.

Dkt. No. 120 at 5–6.

Indeed, the Court's primary concerns regarding Zarate's waiver involved the validity of his August 12, 2019 Declaration, in that it was not properly authenticated and constituted inadmissible hearsay. However, the original apostilled[1] copy with the corresponding translation of Zarate's renewed September 24, 2019 Declaration is now provided to the Court. *See* Dkt. No. 120, Ex. 2, Declaration of Zarate. Further, the Court finds that Matt Alford's ("Alford") renewed September 24, 2019 Declaration was given under penalty of perjury pursuant to 28 U.S.C. § 1746. Dkt. No. 120, Ex. 3, Declaration of Alford. Though the Court adheres to its previous finding of the existence of a serious potential conflict of interest, the Court now concludes that Zarate's renewed waiver is valid under the ABA Model Rules of Professional Conduct and the Texas Disciplinary Rules of Professional Conduct. The Court therefore grants Defendant's Renewed Motion to Substitute Counsel. Dkt. No. 120.

---

[1] A document is self-authenticating if it is filed with a certificate of authenticity known as an "Apostile" certificate. The Apostile certificate certifies "the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears." 1961 Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, art. 3, Oct. 5, 1961, 33 U.S.T. 883, 527 U.N.T.S. 189 ("Hague Convention"); *see Sanchez v. Kerry*, No. 4:11-cv-2084, 2014 WL 2932275, at *5 (S.D. Tex. June 27, 2014). Zarate's renewed waiver was accompanied with an Apostile certificate.

### III. Monarrez's Claim for Compensation

#### a. Legal Standard

The CJA governs the appointment and compensation of counsel for defendants who are financially unable to obtain adequate representation in federal criminal proceedings. It provides that an appointed attorney shall be compensated for "time expended in court or before a U.S. magistrate judge," "time reasonably expended out of court," and "expenses reasonably incurred." 18 U.S.C. § 3006A(d)(1). The district court, empowered to "fix the compensation and reimbursement to be paid," has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. 18 U.S.C. § 3006A(d)(1); *United States v. Smith*, 76 F. Supp. 2d 767, 768 (S.D. Tex. 1999).

The current version of the statute authorizes a maximum compensation of $11,500 if the case is a felony at the trial court level. *See* CJA Guidelines § 230.23.20. Payment in excess of the maximum may be made for extended or complex representation when the district court certifies that the excess payment is "necessary to provide fair compensation" and is approved by the chief judge of the circuit. 18 U.S.C. § 3006A(d)(3); CJA Guidelines § 230.23.40.

The threshold determination in evaluating a claim for excess payment is whether the representation was extended or complex. *United States v. Vead*, No. 3-03-CR-422-D(01), 2005 WL 1025798, at *2 (N.D. Tex. Apr. 29, 2005). Representation is "extended" if more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings. CJA Guidelines § 230.23.40(b). Representation is "complex" if the legal or factual issues are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case. *Id.* Once the attorney establishes that his representation was extended or complex, the court must decide whether the excess payment is necessary to provide fair compensation. CJA Guidelines § 230.23.40(c). The following criteria may be useful in this determination: (1) the responsibilities involved measured by the magnitude and importance of the case; (2) the manner in which duties were performed; (3) the knowledge, skill, efficiency,

professionalism, and judgment required of and used by counsel; (4) the nature of counsel's practice and injury thereto; (5) any extraordinary pressure of time or other factors under which services were rendered; and (6) other circumstances relevant and material to a determination of a fair and reasonable fee. *Id.*

### b. Legal Analysis

As a threshold matter, the Court determines that this case is both extended and complex under 18 U.S.C. § 3006A. On April 24, 2018, Monarrez was appointed under the CJA to represent Yarrington, who is facing an 8-count superseding indictment for, *inter alia*, racketeering, through conspiracies to possess with intent to distribute and import large controlled substances; conspiracy to launder monetary instruments and funds; and conspiracy to structure transactions to evade reporting requirements. The superseding indictment contains allegations that date back twenty years. *See* Dkt. No. 20. Further, on May 1, 2018, the Government filed a Motion to Certify Case as Complex Litigation, representing the following:

> [T]he trial of this indictment will involve extensive evidence, both oral and documentary. In addition, evidence from numerous seizures and investigations will be introduced. It is anticipated that numerous witnesses, some who are currently located in other countries, will testify. It is estimated that a trial in this case will take approximately four weeks.
>
> Due to the volume of discovery, the production process will be lengthy and complicated. There are currently over 15,000 digital documents consisting of over 100,000 pages that will be made available during discovery. There will be several binders of items available for discovery which will include subpoenaed documents, items taken from numerous search warrants, and photographs. Additionally, reports from this investigation involved multiple agencies, including the Homeland Security Investigations, Drug Enforcement Administration, and the Internal Revenue Service, and are extensive.
>
> It is anticipated that the case may present novel questions of fact and/or law and it is unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the time limits established by 18 U.S.C. § 3161.

Dkt. No. 74. On May 2, 2018, the Court granted the motion and certified the case as a complex case pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii). Dkt. No. 75. Additionally, on June 18, 2018, the Court granted Defendant's Unopposed Motion for Appointment of Co-Counsel and appointed Mosbacker as co-counsel to assist in handling this case. Dkt. No. 87. Discovery has been ongoing for well over a year, and trial is currently set for January 2020. Due to the long duration of discovery, the complexity of the issues, and the extensive breadth of evidence, the Court concludes that this case is extended and complex under 18 U.S.C. § 3006A.

Having determined that this case has involved extended and complex representation, the Court must now decide whether excess payment is necessary for fair compensation. On October 9, 2019, after receiving Defendant's Renewed Motion to Substitute Counsel and responsive briefing, the Court ordered Monarrez and Mosbacker to complete CJA Form 20 with an attached copy of all supporting documents. Dkt. No. 127. On October 22, 2019, Monarrez submitted his voucher, requesting $33,911.77 in attorney's fees and costs—$383.60 for time expended in court; $32,855.20 for time expended out of court; and $672.97 for travel expenses. Because Monarrez's claim exceeds the statutory maximum of $11,500,[2] Monarrez was directed to submit a memorandum and meet with the Clerk's Office on November 7, 2019, to address the Court's questions and concerns with his claim for compensation.[3]

Following the meeting, a revised voucher was submitted, requesting $33,220.85—$383.60 for time expended in court; $32,218.80 for time expended out of court; and $618.45 for travel expenses.[4] Monarrez claims 2.7 hours for in-court services and 226.50 for out-of-court services. His in-court services include 0.20 hours for arraignment and 2.5 hours for other court hearings, such as status conferences

---

[2] *See* CJA Guidelines § 230.23.20.
[3] The Court relied on its authority granted by Section XII.B of the Southern District of Texas CJA Plan ("SDTX Plan"), which was most recently amended on December 12, 2018.
*See* https://www.txs.uscourts.gov/sites/txs/files/General%20Order%202018-18%20Criminal%20Justice%20Act%20Plan.pdf.
[4] The revised voucher corrects a minor clerical error—Monarrez did not travel to the Willacy County Detention Center on May 4, 2019.

and motion hearings. His out-of-court services include 66.40 hours for interviews and conferences; 54.80 hours for obtaining and reviewing records; 27.10 hours for legal research and brief writing; 55.40 for investigative and other work; and 22.80 for travel time.

Applying the relevant factors, the Court determines that the excess payment of $33,220.85 is necessary for fair compensation. Monarrez devoted a considerable amount of time and resources to this case by acquiring and reviewing voluminous discovery materials; coordinating and engaging in face-to-face meetings with Yarrington; and researching complex legal issues. In particular, Monarrez sufficiently addresses the Court's concerns regarding the following services performed: (1) Communication with Yarrington's family: Monarrez represents that he frequently communicated with Yarrington's family to obtain and review discovery materials (purportedly thousands of documents), evaluate the validity of certain defenses, and weigh the consequences of pleading guilty or going to trial; (2) Communication with the Mexican Consulate: Monarrez states that the Mexican Consulate contacted him often due to its concerns of Yarrington's conditions of imprisonment. Yarrington was unable to communicate with his family for extended periods of time, so the Mexican Consulate relayed those concerns to Monarrez; and (3) Communication with Flood: Monarrez asserts that he and Flood discussed the possibility of changing Yarrington's representation. Given that Monarrez's services were necessarily done in furtherance of Yarrington's defense, the Court concludes that payment in excess of the maximum be certified for approval to the Chief Judge of the Circuit.

Monarrez also seeks $618.45 in travel expenses. Monarrez met with Yarrington fifteen times from April 2018 to July 2019, approximately once a month since Yarrington's detention. Because the case required reviewing voluminous materials with Yarrington and discussing his potential defenses and resolution of the case, the Court finds that Monarrez's travel to meet with Yarrington was reasonable and is thus certified for approval.

## IV.   Conclusion

The Court **GRANTS** Defendant's Renewed Motion to Substitute Counsel, Dkt. No. 120, and **DIRECTS** the Clerk to remove Monarrez as appointed co-counsel, and to add Flood and Mosbacker as retained co-counsels for Yarrington.

The Court **ORDERS** and **CERTIFIES** that the Clerk of the Court shall transmit Carlos Monarrez's Application for Compensation to the Chief Judge of the Fifth Circuit, and this Certificate for consideration by the Chief Judge of the Circuit. In the event that the Chief Judge of the Fifth Circuit approves of Monarrez's Application for Compensation, Defendant will be ordered to pay the attorney's fees and costs to the Clerk of the Court for deposit into the Treasury pursuant to 18 U.S.C. § 3006A(f),[5] CJA Guidelines § 230.40(c),[6] and SDTX Plan § IV(B)(2)(g).[7]

---

[5] "Receipt of Other Payments.—Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant."

[6] "When the court determines that a person who received representation under the CJA was financially ineligible for those services at the time they were rendered, and directs that the person reimburse the government, the payment should be made by check or money order to the clerk of court for deposit into the Treasury. Such funds will be credited to the Defender Services appropriation."

[7] "If at any time after the appointment of counsel, a judge finds that a person provided representation is financially able to obtain counsel or make partial payment for the representation, the judge may terminate the appointment of counsel or direct that any funds available to the defendant be paid as provided in 18 U.S.C. § 3006A(f)."

The Court **GRANTS** Defendant's Unopposed Motion to Continue Settings, Dkt. No. 125. The following deadlines and settings are **RESET**:

- Motions Filing due by:            December 20, 2019
- Response to Motions due by:       January 9, 2020
- Motion Hearing:                   February 12, 2020 at 9:30 a.m.
- Final Pretrial Conference:        March 24, 2020 at 9:30 a.m.
- Jury Selection:                   March 31, 2020 at 9:30 a.m.
- Jury Trial:                       April 1, 2020 at 9:00 a.m.

All settings will be held in the Houston Division, Federal Courthouse, 515 Rusk St., Houston, TX 77002. All counsel and the Defendant must be present.

SIGNED this 12th day of November, 2019.

_____
Hilda Tagle
Senior United States District Judge