UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 1:12-CR-435-S1-001 |
| | § | |
| TOMAS YARRINGTON RUVALCABA | § | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO RECONSIDER ORDER OF DETENTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the United States of America by and through the United States Attorney for the Southern District of Texas and herein opposes the *Defendant's Motion to Reconsider the Order of Detention dated April 26, 2018 and Emergency Request for Release upon Reasonable Conditions* (Document 149). The government requests that the Defendant's Motion be denied. In support hereof, the government would show the Court as follows:

**DECLARATION OF MATERIAL FACTS**

The defendant TOMAS YARRINGTON RUVALCABA was arrested in 2017 in Italy where he had been living under an assumed name to avoid capture by law enforcement as a fugitive from justice since 2012. At the time of Yarrington's arrest in Italy, he was travelling under an alias with identification issued in Mexico. The alias name was Jose Angel Marquez Perez with a listed date of birth as XXXXX, XX, 1958. The forms of identification were a Mexican Driver's License and a Mexican Voter Identification Card with the fake name containing a photograph of the defendant. He was extradited to the United States to face the instant charges. U.S. Magistrate Judge Morgan conducted a detention hearing and found that the defendant is a flight risk, and that no bail conditions will assure his presence in court. (DE 4/26/18 and Document 72).

## DISCUSSION

Defendant's motion, which focuses primarily on the potential of a COVID-19 outbreak where he is detained, largely ignores the factors the Court is actually required to consider in determining whether defendant should be released or detained pending trial. Those factors militate strongly for defendant's continued detention.

The Bail Reform Act, 18 USCA 3142(f), provides for a rebuttable presumption in favor of detention in certain cases. The rebuttable presumption relating to both "risk of flight" and "danger to the community" pertains to those cases where the judicial officer finds there is probable cause to believe that the defendant committed: (1) a drug offense (as defined under Title 21) when the maximum term of imprisonment is 10 years or more under 18 U.S.C. § 3142(e). In this case, there has already been a probable cause finding by virtue of the indictment charging him with a drug offense with a maximum penalty of more than ten years (Count Two of Document 20). In addition, Judge Ronald G. Morgan found him a flight risk (DE 4/26/18 and Document 72).

## BOP MEASURES TO AVOID A COVID-19 OUTBREAK

Defendant does not meaningfully contest the foregoing analysis and focuses instead on the health risks he faces from a potential COVID-19 outbreak. To be sure, the Bail Reform Act instructs the Court to consider defendant's own "physical and mental health," 18 U.S.C. § 3142(g)(3)(A), but the general existence of a pandemic does not have significant bearing on that assessment. Currently, there are no reported cases of COVID-19 at FDC Houston facility operated by the Bureau of Prisons (BOP). The defendant does not claim to be infected with the coronavirus such that he might cause an outbreak himself. Instead, defendant relies on the possibility that he will become infected by someone else at the facility. Even if this Court could

weigh such a speculative risk (and properly discount it by risk of defendant's becoming infected in the community), defendant's concern is misplaced.

BOP has been planning for potential coronavirus transmissions since January of 2020. On March 13, 2010, BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises several preventive and mitigation measures, including the following:

Screening of Inmates and Staff: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

Quarantine Logistics: The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

Suspension of Social Visits and Tours: BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per

month. Tours of facilities are also suspended for at least the next 30 days.

Suspension of Legal Visits:  BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screen protocols for prison staff.

Suspension of Inmate Movements:  BOP has also ceased the movement of inmates and detainees among its facilities for at least the next 30 days. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations.

Modified Operations:  Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.

Taken together, these measures should sharply mitigate the risks of COVID-19 transmission defendant purportedly fears. Given that there are no reported cases of COVID-19 infection in FDC Houston facility, and no persons will be admitted to those facilities without being screened for symptoms and risk of infection, the risk that defendant himself will be infected simply as a result of his detention is minimal and entirely manageable. Defendant's speculative concerns to the contrary should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully urges the Court to deny the

defendant's Motion to Reconsider Order of Detention.

        Respectfully submitted,

        RYAN K. PATRICK
        United States Attorney

By:    *s/ Karen Betancourt*
        **KAREN BETANCOURT**
        Assistant United States Attorney
        Fed. Bar No. 847429
        Texas Bar No. 00790685
        600 E. Harrison St., #201
        Brownsville, TX 78520
        Tel: (956) 548-2554
        Fax: (956) 548-2711

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of March, 2020, a copy of *Government's Response to Defendant's Motion to Reconsider Order of Detention* was served via Notice of Electronic Filing to Defense Counsel for TOMAS YARRINGTON RUVALCABA.

        *s/ Karen Betancourt*
        **KAREN BETANCOURT**
        Assistant United States Attorney