United States District Court
Southern District of Texas
**ENTERED**
April 07, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL NO. 1:12-CR-435-1 |
| § | |
| TOMAS YARRINGTON RUVALCABA § | |

# ORDER

The Court is in receipt of Defendant's Motion to Reconsider the Order of Detention Dated April 26, 2018, and Emergency Request for Release Upon Reasonable Conditions, Dkt. No. 149, and the Government's Response, Dkt. No. 152. For the reasons below, the Court **DENIES** Defendant's Motion, Dkt. No. 149.

## I.  Relevant Background

On May 22, 2013, the grand jury returned an indictment in the above-styled and numbered cause against Defendant Tomas Yarrington Ruvalcaba ("Yarrington"), charging him in eight counts: (1) Count 1: Racketeer Influence and Corrupt Organization ("RICO") Conspiracy under 18 U.S.C. § 1962(d); (2) Count 2: Conspiracy to Import Cocaine and Marihuana into the United States under 21 U.S.C. § 963; (3) Count 3: Conspiracy to Launder Monetary Instruments under 18 U.S.C. § 1956(h); (4) Count 4: Conspiracy and Make False Statements to Financial Institutions under 18 U.S.C. §§ 371 & 1014; (5) Count 5: Conspiracy to Commit Bank Fraud under 18 U.S.C. § 1349; (6) Count 8: Bank Fraud and Aiding and Abetting under 18 U.S.C. §§ 2 & 1344; (7) Count 10: Bank Fraud and Aiding and Abetting under 18 U.S.C. §§ 2 & 1344; and (8) Count 11: Conspiracy to Structure Transactions to Avoid Reporting Requirements under 18 U.S.C. § 371 and 31 U.S.C. § 5324. Dkt. Nos. 20 & 73. On the same day, a bench warrant was issued for Yarrington's arrest. Dkt. No. 24.

From February 2012 to April 2017, Yarrington freely resided in Europe. *See* Dkt. No. 86 at 3. On April 9, 2017, he was arrested and detained by the Italian

government. On February 26, 2018, the Supreme Court of Italy (the "Corte Di Cassazione") affirmed the lower court's decision regarding his extradition. The judgment was delivered to the Italian Ministry of Justice on April 4, 2018. On April 18, 2018, the Italian Minister of Justice agreed to the extradition of Yarrington to the United States of America. *See* Dkt. No. 142-3 at 3. On April 20, 2018, he was transported by U.S. law enforcement officials from Italy to the United States. *Id.* at 9. On the same day, the arrest warrant was executed on Yarrington in Brownsville, Texas. *See* Dkt. No. 65.

On April 26, 2018, Yarrington appeared in the Southern District of Texas before Magistrate Judge Ronald G. Morgan for arraignment and a detention hearing. Pursuant to 18 U.S.C. § 3142(f) of the Bail Reform Act, Magistrate Judge Morgan ordered him detained pending trial based on his finding that Yarrington poses a flight risk. *See* Dkt. No. 72. He was initially detained in a facility in San Patricio County and is now housed in a Federal Detention Center in Houston, Texas. An immigration detainer was filed with the U.S. Marshals Service on April 23, 2018. *See* Dkt. No. 86.

In the United States, the first case of coronavirus disease 2019 ("COVID-19"), a respiratory illness that can spread from person-to-person, was reported on January 21, 2020. Those with COVID-19 have had mild to severe respiratory illness with symptoms of fever, cough, shortness of breath, pneumonia, multi-organ failure, and in some cases death.[1] As of April 6, 2020, 330,891 positive cases of COVID-19 and 8,910 deaths due to COVID-19 have been reported to the CDC.[2]

On March 27, 2020, Yarrington filed a Motion to Reconsider the Order of Detention Dated April 26, 2018, and Emergency Request for Release Upon Reasonable Conditions. Dkt. No. 149. On March 31, 2020, the Government filed a Response. Dkt. No. 152.

---

[1] *See* Centers for Disease Control and Prevention ("CDC"), Fact Sheet, https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf (last updated March 20, 2020).

[2] *See* CDC, Cases in U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated April 6, 2020).

## II. Legal Standard

The Bail Reform Act of 1984 ("BRA") prescribes a comprehensive procedure for release or detention of those charged with federal crimes. *United States v. Barnett*, 986 F. Supp. 385, 391 (W.D. La. 1997). A judicial officer may order a defendant detained pending trial upon a finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The existence of probable cause to believe that a defendant committed a drug offense[3] for which a maximum term of imprisonment of ten years or more creates a rebuttable presumption that no conditions of release will reasonably assure the appearance of the person as required or the safety of others and the community. 18 U.S.C. § 3142(e)(3)(A). Probable cause exists when offenses under the Controlled Substances Act are charged with an indictment. *United States v. Trosper*, 809 F.2d 1107, 1110 (5th Cir. 1987).

Courts consider the following factors in determining whether a person poses a flight risk or a danger to the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). For pretrial detention to be imposed, "the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required." *United States v. Reuben*, 974 F.2d 580, 586 (5th Cir. 1992).

If a court orders pretrial detention because no conditions can be fashioned to reasonably assure the appearance of the person as required and the safety of any other person and the community, an independent mechanism exists for a defendant to request temporary release. *United States v. Cox*, No. 2:19-cr-00271-RFB-VCF,

---

[3] This includes an offense under the Controlled Substances Act (21 U.S.C. § 801, et seq.) or the Controlled Substances Import and Export Act (21 U.S.C. § 951, et seq.). *See* 18 U.S.C. § 3142(e)(3)(A).

2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020). Subsection (i) states: "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Thus, a court may temporarily order a defendant's pretrial release if one of two conditions is met: such release must be necessary for the preparation of the person's defense or for another compelling reason. A defendant bears the burden of establishing circumstances warranting his temporary release. *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases).

Several federal district courts have addressed a defendant's request for temporary pretrial release due to the COVID-19 outbreak and have factored it into the assessment of whether a "compelling reason" exists to permit temporary release of a pretrial defendant. *See Cox*, 2020 WL 1491180, at *4 (denying request because "the threat of COVID-19 must be balanced against other known information" such as previous finding that defendant is a flight risk and danger to community), *but see United States v. Little*, No. S3-20-CR-57, 2020 WL 1439979, at *5 (S.D.N.Y. Mar. 24, 2020) (granting release after considering seriousness of charges, defendant's underlying health issues, and release conditions to ensure court appearances). In particular, a number of courts have considered the following factors in determining whether a defendant is entitled to temporary release under § 3142(i) due to COVID-19 concerns: (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020); *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

### III. Parties' Arguments

In his Motion to Reconsider the Order of Detention Dated April 26, 2018, and Emergency Request for Release Upon Reasonable Conditions, Yarrington seeks an order for temporary release from custody due to the COVID-19 outbreak. He asserts that he is "a 63-year-old, nonviolent inmate with high blood pressure and prediabetic high blood sugar." Dkt. No. 149 at 5. He requests release "on reasonable conditions to include but not limited to home confinement, GPS electronic monitoring, daily 'reporting' to Pretrial Services by phone, or any other combination of conditions which will reasonably assure the safety of Defendant and his appearance of all proceedings." *Id*. He states that, if released, his "likelihood of catching the virus is dramatically decreased and his ability to appear for all court proceedings increased." *Id*. at 2.

In response, the Government reiterates Magistrate Judge Morgan's finding that Yarrington is a flight risk and argues that he has ignored the factors considered in a court's determination of pretrial release. Dkt. No. 152 at 2. Further, the Government asserts that Yarrington's concerns are speculative—there are no reported COVID-19 cases in the Federal Detention Center in which he is held, and the Federal Bureau of Prisons ("BOP") has implemented measures to minimize the risk of COVID-19 transmission. *Id*. at 3–5. The Court now considers the parties' arguments.

### IV. Legal Analysis

As a threshold matter, the Court seriously takes into consideration the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents. *See Clark*, 2020 WL 1446895, at *3. A defendant, however, is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *Id*. Accordingly, the Court will evaluate the following factors to determine whether a "compelling reason" exists such that temporary release is "necessary": (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's stated COVID-19 concerns;

(3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *Id.*

### a. Original Grounds for Defendant's Pretrial Detention

The Court first considers the original grounds for Yarrington's pretrial detention. At the detention hearing on April 26, 2018, the Government represented the following: "We would ask for detention. We would concur with the Pretrial Services Report. The nature of the offense obviously does kick in a rebuttal of presumption. There is an issue of fugitive status for several years. He does have ties to a foreign country. I would say at least Italy. He has relatives in Mexico. He has no current status in the United States. There is a detainer on him. And for all those reasons, as well as there's an unverified employment history, at least the last several years, as well as unverified resources, it all adds up to I think that obviously detention would apply." Dkt. No. 131 at 9. Magistrate Judge Morgan then ordered Yarrington detained pending trial upon a finding that he is "a risk of flight and short of detention, there is no condition or combination of conditions that would reasonably assure the defendant's appearance at further court proceedings or safeguard the community." Dkt. No. 72.

Indeed, the record amply supports the finding that Yarrington is a high-risk defendant. He is the main defendant named in an indictment where a grand jury found probable cause to believe that he was engaged in, *inter alia*, conspiracy to import cocaine and marihuana into the United States in violation of 21 U.S.C. § 963. He is facing a statutory minimum of ten years to life imprisonment. *See* Dkt. No. 73. As such, a rebuttable presumption arises under 18 U.S.C § 3142(e)(3)(A) that no condition or combination of conditions will reasonably assure his appearance or the safety of any other person or the community.

Further, significant resources were expended to arrest Yarrington and bring him to the United States. Though an arrest warrant was issued on May 22, 2013, Yarrington was freely residing in Europe since February 2012 where he "lived rent-

free at various locations with friends" and "relied on the generosity of friends for his basic living expenses." *See* Dkt. No. 86 at 3. To avoid capture by law enforcement, he was using an alias of "Jose Angel Marquez Perez" with identification issued in Mexico. Dkt. No. 152 at 1. He was later arrested by Italian officials on April 9, 2017, and extradited to the United States on April 20, 2018. *See* Dkt. No. 142-3 at 3.

Importantly, even if Yarrington were granted temporary release, he is still subject to detention by Immigration and Customs Enforcement ("ICE"). *See United States v. Lett*, 944 F.3d 467, 469 (2d Cir. 2019) (holding "immigration authorities may lawfully detain a criminal defendant ordered to be released under the BRA pursuant to their authority under the INA to detain aliens"). He is a Mexican citizen with no legal status in the United States, and an immigration detainer has been filed with the U.S. Marshals Service. *See* Dkt. No. 86 at 2. Further, the Court is unwilling to put an Immigration Judge in a position to second-guess a district court's decision of temporary release, especially given the severity of Yarrington's charges, his previous fugitive status, and the bares bones nature of his Motion for Release. Thus, because Yarrington is still subject to immigration detention, granting temporary release may ultimately be an exercise in futility.

### b. Specificity of Defendant's Stated COVID-19 Concerns

The Court next examines the specificity of Yarrington's stated COVID-19 concerns. Yarrington states that the COVID-19 pandemic "puts Defendant's life increasingly in danger . . . especially because of his age and comorbidities"—he is "a 63-year-old, nonviolent inmate with high blood pressure and prediabetic high blood sugar." Dkt. No. 149 at 1, 5. Under CDC Guidelines, those who are at higher risk for severe illness due to COVID-19 include adults 65 years or older; people with underlying conditions such as serious heart conditions, chronic lung disease or moderate to severe asthma, severe obesity, diabetes, liver disease, and chronic kidney disease and who are undergoing dialysis; and people with conditions that can cause them to be immunocompromised (including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV

or AIDS, and prolonged use of corticosteroids and other immune weakening medications).[4] Those with high blood pressure may face higher risks of complications from COVID-19.[5] It is possible that Yarrington may be at higher risk for severe illness, though uncertain given current medical guidelines.

However, Yarrington's concerns about contracting COVID-19 in the detention facility are general and speculative. There are no reported cases in the facility, and BOP has implemented precautionary measures to minimize the risk of transmission, including COVID-19 screening of all new inmates; establishing quarantine areas for those infected or at heightened risk for exposure; ceasing inmate movement among its facilities; suspending all social visits and limiting legal visits; and modifying operations to maximize social distancing. Dkt. No. 152; *see Smoot*, 2020 WL 1501810, at \*3 ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release."); *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at \*2 (S.D.N.Y. Mar. 20, 2020) (denying temporary release to inmate with advanced age, dementia, and a history of stroke and heart attack). Neither Yarrington nor the Court can predict the extent to which COVID-19 might arise at the facility or how the facility might respond to an outbreak any more accurately than many Americans can predict their exposure to the virus or their local hospitals' response. *Clark*, 2020 WL 1446895, at \*3. Accordingly, Yarrington's stated concerns are insufficient to justify release.

### c. Effect of Release Plan on Defendant

The Court now addresses the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to Yarrington. Yarrington provides no details regarding his release conditions. He simply states that he seeks release "on reasonable conditions to include but not limited to home confinement,

---

[4] *See* Centers for Disease Control and Prevention ("CDC"), Fact Sheet, https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf (last updated March 20, 2020).
[5] American Heart Association, Coronavirus Questions, https://www.heart.org/en/coronavirus/coronavirus-questions (last viewed April 2, 2020).

GPS electronic monitoring, daily 'reporting' to Pretrial Services by phone, or any other combination of conditions which will reasonably assure the safety of Defendant and his appearance of all proceedings." Dkt. No. 149 at 5. He offers no details as to where he will stay and how he will arrive at the location. *See Smoot*, 2020 WL 1501810, at *3. Further, Defendant's COVID-19 risks may likely be exacerbated were he to be released, whereas "access to jails is both extremely limited and strictly enforced." *Id*. Thus, this factor weighs against release.

### d. Effect of Release Plan on Public

Lastly, the Court analyzes the likelihood that Yarrington's proposed release would increase COVID-19 risks to others. Again, Yarrington offers no details regarding release conditions. *See Smoot*, 2020 WL 1501810, at *3. Further, "[a] defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *3. Importantly, the Court also considers the original grounds for Yarrington's detention and Magistrate Judge Morgan's finding that he is "a risk of flight and short of detention, there is no condition or combination of conditions that would reasonably assure the defendant's appearance at further court proceedings or safeguard the community." Dkt. No. 72. The fourth factor favors continued detention.

## V. Conclusion

In sum, Yarrington has not established compelling reasons sufficient to necessitate temporary release. Therefore, the Court **DENIES** Defendant's Motion to Reconsider the Order of Detention Dated April 26, 2018, and Emergency Request for Release Upon Reasonable Conditions, Dkt. No. 149.

SIGNED this 6th day of April, 2020.

_____
Hilda Tagle
Senior United States District Judge