```
 1                    UNITED STATES DISTRICT COURT

 2                    SOUTHERN DISTRICT OF TEXAS

 3                        HOUSTON DIVISION

 4

 5

 6   UNITED STATES OF AMERICA        .   1:12-CR-435
                                     .
 7   VS.                             .   HOUSTON, TEXAS
                                     .   MARCH 15, 2023
 8   TOMAS YARRINGTON RUVALCABA      .   2:00 P.M.
                                     .
 9        DEFENDANT.                 .
                                     .
10   ................................

11

12                   TRANSCRIPT OF SENTENCING
                  BEFORE THE HONORABLE ROLANDO OLVERA
13                  UNITED STATES DISTRICT JUDGE

14

15

16                         APPEARANCES

17

18

19   FOR THE GOVERNMENT:

20       Karen Betancourt
         Assistant United States Attorney
21       600 East Harrison Street
         Suite 201
22       Brownsville, Texas  78520

23

24

25
```

EXHIBIT A

***APPEARANCES CONTINUED***

ALSO FOR THE GOVERNMENT:

    Jon Muschenheim
    Assistant United States Attorney
    800 North Shoreline Boulevard
    Suite 500
    Corpus Christi, Texas  78401

FOR THE DEFENDANT:

    Chris Flood
    FLOOD AND FLOOD
    914 Preston
    Suite 800
    Houston, Texas  77002

OFFICIAL COURT REPORTER:

    Mayra Malone, CSR, RMR, CRR
    U.S. Courthouse
    515 Rusk, Room 8004
    Houston, Texas  77002

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

- - - - -

EXHIBIT A

```
13:51     1                        PROCEEDINGS
          2          (Official court interpreter translating)
          3          THE COURT:  Let's go on the record with respect to
          4   United States of America versus Tomas Yarrington Ruvalcaba.
13:57     5          MS. BETANCOURT:  Good afternoon, Your Honor.  Karen
          6   Betancourt and Jon Muschenheim for the government.  We're
          7   ready.
          8          MR. FLOOD:  Good afternoon, Your Honor.  Chris Flood
          9   on behalf of the defendant, Mr. Ruvalcaba.
13:58    10          THE COURT:  Good afternoon, Mr. Flood.
         11              Let's swear in the defendant, please.
         12      (Defendant sworn)
         13          THE COURT:  Please say your full correct legal name,
         14   sir.
13:58    15          THE DEFENDANT:  Tomas Jesus Yarrington Ruvalcaba.
         16          THE COURT:  Thank you, sir.  You are before the Court
         17   for sentencing.  The Court has the PSR.
         18              Mr. Flood, any objections to the PSR that have
         19   not already been ruled upon?
13:58    20          MR. FLOOD:  No, Your Honor.
         21          THE COURT:  The Court adopts the PSR, subject to its
         22   rulings.
         23              Ms. Betancourt, please proceed with the
         24   government's report.
13:58    25          MS. BETANCOURT:  Your Honor, this is a plea agreement
```

EXHIBIT A

13:58  1  with a plea to Count Three of conspiracy to money laundering.
2  We're going to start by agreement with a base
3  level of eight, plus 18, for a relevant conduct loss of between
4  3.5 to 9.5 million.  Added to that is the two-point enhancement
13:58  5  for the 1956 charge, a two-point enhancement for the
6  sophisticated method of money laundering and a four-point
7  enhancement for role.  That gets us to an offense level of 34.
8  At this time, we move for a third acceptance point.
9  THE COURT:  Granted.
13:59  10  MS. BETANCOURT:  And that gets us to an offense level
11  of 31, criminal history category of 1.
12  That finding, Your Honor, of 31/1 is consistent
13  with the Court's order in 196 resolving all of the objections
14  of which the Court, after reviewing the defendant's
13:59  15  objections and the government's response, resolves the
16  objections and gets us to a 34/1.  That would put the range of
17  punishment for the Court's consideration between 108 and 130
18  months.
19  Your Honor, just a couple things to note.  Of
13:59  20  course, this day has been a long time coming, Your Honor.  As
21  you know, Mr. Yarrington was the governor of Tamaulipas.  He
22  was also a presidential candidate for the country of Mexico.
23  While he was in the governorship, of course, he admitted to
24  knowingly taking some bribe money.  That bribe money then,
13:59  25  using those illegal funds, he laundered it by concealing it

EXHIBIT A

13:59  1  here in the United States to support a very lavish lifestyle.
       2  Those ill-gotten gains bought for him a condominium on
       3  South Padre Island; for his family, another condominium in Port
       4  Isabel, which we will discuss here in a moment.  There were
14:00  5  lavish homes in Mission, additional second homes in Austin,
       6  airplanes, luxury vehicles and a number of investment
       7  properties in Brownsville, on South Padre Island, and in the
       8  La Canterra area of San Antonio.  And that is accounted for,
       9  Your Honor, in the agreement that the government made that's
14:00 10  outlined in the factual summary.
      11          So the government -- Mr. Yarrington -- we have
      12  put forth to the Court what the government submits is a very
      13  fair resolution to this matter, the plea to the money
      14  laundering and the guideline range of 108 to 135 months.  We're
14:00 15  asking the Court to sentence within the guideline range.  We're
      16  asking the Court to not consider any variance or any further
      17  reductions; that the resolution for the conduct which
      18  Mr. Yarrington committed, a fair sentence is between 108 and
      19  135 months.  And, Your Honor, we do have a plea agreement.  And
14:01 20  the plea agreement is for the low end.  So the government is
      21  recommending to the Court a 108-month sentence.
      22          THE COURT:  Mr. Flood, your response.
      23          MR. FLOOD:  Thank you, Your Honor.
      24          As you well know, we were trying to get a lower
14:01 25  recommendation.  We made every effort to do that, and the 108

EXHIBIT A

```
14:01    1   we don't agree -- disagree with.  However, one of the things in
         2   this case, a factor that's not been adequately taken into
         3   consideration, I believe, is the fact that through no fault of
         4   his own, Mr. Yarrington was brought into the country and placed
14:01    5   in solitary confinement because -- out of his -- for his own
         6   safety, rather, not because he was dangerous to others.  The
         7   Marshal's Service designated him as being in danger; not
         8   dangerous.
         9               For that reason -- and you take into
14:01   10   consideration the fact that the pandemic occurred in the middle
        11   of all of this, he has been in solitary confinement for five
        12   years.
        13               In my 35 years of practice, I have never seen
        14   that type of situation, Your Honor, and so that's a fact and
14:02   15   circumstance present in this case.  And so what we would ask is
        16   that the Court take that into consideration.  It can be done in
        17   a number of different ways.  One is, pretrial conditions of
        18   confinement is not a factor taken into consideration by the
        19   Sentencing Commission when formulating the guidelines, and so
14:02   20   you could take it into consideration as a departure.
        21               If not, if you don't think it rises to a level of
        22   departure, you could vary from the guidelines under 3550(a) as
        23   being part of the circumstances in the case.
        24               The final thing you could do, if you don't -- if
14:02   25   you decide neither of those serve the purpose, you could award
```

EXHIBIT A

14:02  1   additional credit.

2   Now, most of the time, you hear people come in
3   and say, Well, I was in solitary confinement, we are asking for
4   two-for-one credit.  That's not what we are asking for.  We are
14:03  5   actually asking for less.  And I think taking into
6   consideration the fact that it's kind of involuntary protective
7   custody, that the Marshal Service is the one that kind of
8   created that problem, we are asking for a half-day credit for
9   every day that he's been in solitary confinement.
14:03  10   So I think the parties agree that he
11   has 71-months credit when taking into consideration all the
12   time in official custody.
13   MS. BETANCOURT:  Judge, this is the way that I am
14   going to say it, because this is the way the Bureau of Prisons
14:03  15   calculates it, but we are going to agree that he should receive
16   credit for time served beginning April 9 of 2017.
17   So, yes, Mr. Flood is right.  It is close to six
18   years, but for the Court's calculations, he has been in custody
19   since his arrest in Italy on the Interpol notice on April 9 of
14:03  20   2017.
21   MR. FLOOD:  So what I'm going to suggest is this, Your
22   Honor, if you take half of the 60 months he's been in
23   protective custody, then 30 months would be either taken off
24   the 108 recommendation by the government -- that's what we are
14:04  25   asking -- or an additional 30 months be added to his credit.

EXHIBIT A

14:04  1          Putting numbers to that argument, Your Honor,
       2  that would make a sentence -- we're asking for, I guess, a
       3  sentence of 78 months because it takes into consideration one
       4  factor that does exist in this case and exists in a way that is
14:04  5  much more egregious, let's say, than any other case I have ever
       6  seen.
       7          So, we don't disagree with the 108, based on the
       8  facts and circumstances of the case and everything, but we're
       9  asking for a reduction to 78 months based on that
14:04 10  representation, Your Honor.
      11          MS. BETANCOURT:  Judge, I think probation is going to
      12  feel more comfortable if I put on the record that you have
      13  sustained the government filing a response agreeing that the
      14  funds were not related to drugs, and that negates the six-level
14:05 15  enhancement in the PSR and that the funds were not as part of
      16  an abuse of trust situation and that negates the two-level
      17  enhancement.  The numbers are the same.  It's just that putting
      18  that on the record, I guess, clarifies the 31/1 offense level
      19  and criminal history.
14:05 20          THE COURT:  Thank you, Ms. Betancourt.
      21              Mr. Flood, anything else?
      22          MR. FLOOD:  Nothing, Your Honor.
      23          THE COURT:  Mr. Yarrington, it is your right.  Would
      24  you like to make a statement to the Court on your own behalf?
14:05 25          THE DEFENDANT:  Yes, sir.

EXHIBIT A

14:05  1        THE COURT: Go ahead.
       2        THE DEFENDANT: By your leave, Your Honor, it's been
       3   six years since I have lived in custody. It has been a
       4   difficult six years. Hard time. Very hard. Time of
14:06  5   isolation. Time of silence. Time of solitude. But also time
       6   for reflection. Time for repentance. Time for spiritual
       7   growth. Time to reunite with God and to seek his forgiveness.
       8        The man who appears here before you, Your Honor,
       9   is not the same man who set foot in the prison for the first
14:06 10   time six years ago. I have changed, and I have changed for the
      11   better. Today I am closer to becoming the man God wills me to
      12   become.
      13        I apologize to you, the American government, the
      14   Mexican people and my family. I apologize for my misconduct.
14:07 15        Thank you, Your Honor.
      16        THE COURT: Thank you, sir.
      17        Before I address the defendant, I would note for
      18   the record that I have executed an order of forfeiture at
      19   sentencing that was delivered to the Court. That has been
14:07 20   executed effective today.
      21        Are there any other miscellaneous orders that
      22   need to be addressed?
      23        MS. BETANCOURT: As part of that, Judge, will you then
      24   order that the criminal judgment contain the final forfeiture
14:07 25   for the Windward property in Port Isabel?

EXHIBIT A

14:08    1         THE COURT:  So ordered.
         2         MS. BETANCOURT:  Thank you, Judge.
         3         THE COURT:  Anything else?
         4         MS. BETANCOURT:  Not at this time, Your Honor.
14:08    5         THE COURT:  Mr. Yarrington, before I sentence you, I
         6    will state into the record the following:  This is a complex
         7    case with distinct issues.  Any elected official who violates
         8    their oath to the Constitution threatens and weakens their
         9    respective democracy and also promotes criminal and/or
14:08   10    authoritarian agendas.  But, most importantly, that breach of
        11    trust may directly or indirectly endanger law-abiding citizens.
        12              Based upon the seriousness of these offenses,
        13    your request for a variance is denied; however, sir, you are
        14    fortunate that this case is limited in scope exclusively to
14:08   15    money laundering.
        16              In addition, the Court knows about your
        17    significant cooperation with the government and the resulting
        18    plea agreement between the parties.
        19              In conclusion, the Court will abide by the terms
14:08   20    of the plea agreement.  You are hereby sentenced to 108 months
        21    and three years of supervised release.
        22              Please be patient as I read those terms into the
        23    record.
        24              If not deported within 72 hours of release from
14:09   25    the custody of the Bureau of Prisons, you must report in person

EXHIBIT A

```
14:09    1   to the probation office in the district to which you are
         2   released.
         3              While on supervised release, you shall not commit
         4   another federal, state or local crime.  You must not illegally
14:09    5   possess a controlled substance and refrain from unlawful use of
         6   controlled substances.  You must not own, possess or have
         7   access to a firearm, ammunition, destructive device or any
         8   other dangerous weapon.
         9              You are not to reenter the United States
14:09   10   illegally.  If you reenter the United States, you must report
        11   to the nearest probation office within 72 hours after return.
        12              You must cooperate in the collection of a DNA
        13   sample as authorized by law.
        14              The Court finds that you do not have the ability
14:10   15   to pay a fine.  The Court will waive a fine in this case.
        16              The $100 special assessment is --
        17        MS. BETANCOURT:  Your Honor, the government will move
        18   to remit the $100 special assessment and dismiss the remaining
        19   counts pending against Mr. Yarrington.
14:10   20        THE COURT:  In closing, Mr. Yarrington, I appreciate
        21   your comments to the Court, and I would ask that you give me
        22   your word of promise that you will not commit any crimes ever
        23   again.  The promise is not necessary to me but to yourself and
        24   to the family you mentioned.  Is that correct, sir?
14:10   25        THE DEFENDANT:  That's right.  I promise.
```

EXHIBIT A

```
14:10    1            THE COURT:  Good luck to you, sir.
         2            MR. FLOOD:  Your Honor, one last thing.
         3                May we ask for a recommendation to the FCI
         4    Bastrop, Your Honor, if he qualifies?
14:10    5            THE COURT:  The recommendation is granted.
         6                Anything else in terms of placement?
         7            MR. FLOOD:  I have nothing further other than I guess
         8    the calculation of the back time.
         9            MS. BETANCOURT:  Again, Judge, the Bureau of Prisons
14:10   10    calculates in a way that I can't -- Judge already knows this.
        11            THE COURT:  The Bureau of Prisons has their own
        12    calculations, and he will receive credit for the time served
        13    but based on their calculations.
        14            MS. BETANCOURT:  Starting though -- we all agree the
14:11   15    starting date -- if the Court includes this in their judgment,
        16    or however that gets resolved, the starting date is April 9,
        17    2017.
        18            THE COURT:  So noted.
        19            MR. FLOOD:  That's correct, Your Honor.  Thank you
14:11   20    again.
        21            THE COURT:  That is judicially admitted by the Court.
        22                Anything else?
        23            MR. FLOOD:  Nothing further, Your Honor.
        24            MS. BETANCOURT:  Nothing further from the government,
14:11   25    Your Honor.
```

EXHIBIT A

1        *(Court adjourned at 2:11 p.m.)*

2                              * * * *

3        I certify that the foregoing is a correct transcript from

4   the record of proceedings in the above-entitled cause.

5

6   Date: July 24, 2023

7

                         */s/ Mayra Malone*
8                        ---------------------------------------
                         Mayra Malone, CSR, RMR, CRR
9                        Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          EXHIBIT A